(24 Misc. Rep. 412.)

### PEOPLE ex rel. CRABTREE v. SCULLY, City Clerk.

(Supreme Court, Special Term, New York County. August, 1898.)

STATUTES—IMPLIED REPEAL—GREATER NEW YORK CHARTER—AUCTIONEERS—LICENSE.

> Greater New York Charter, § 34 (Laws 1897, c. 378), authorizing the issuance of an auctioneer's license by the city clerk on the filing of a bond approved by him, was not repealed by Laws 1897, c. 682, requiring auctioneers in cities of over 1,000,000 inhabitants to obtain a license from the mayor, and pay a fee of $250.

Motion by the people, on the relation of Albert E. Crabtree, for a peremptory writ of mandamus to compel P. Joseph Scully, city clerk of the city of New York, to issue an auctioneer's license to relator. Writ awarded.

Jacob A. Cantor and Edward Jacobs, for relator.

Thomas Allison, for New York Real-Estate Auctioneers' Ass'n.

Joseph Whalen, Corp. Counsel, and Charles Blandy, for respondent.

RUSSELL, J. The relator seeks the aid of a peremptory writ of mandamus to compel the city clerk to license him to perform the duties of an auctioneer in the city of New York. The sole objection by the city clerk is that a license fee of $250 should be first paid. Such resistance is made under the authority of chapter 682 of the Laws of 1897, which became a law on the 22d day of May, 1897. That act provides that no person, corporation, or association should thereafter carry on the business of auctioneer in cities of 1,000,000 of inhabitants and over without having first obtained from the mayor of said city a license authorizing him to transact such business, and that the

mayor of the city should grant such license on the payment of the sum of $250. As an example of crude legislation, this act is to be highly commended. The city of New York at the time of the passage of the act was the only city in the state having a population of over 1,000,000; the city of Brooklyn having only 957,163 inhabitants. This general law was passed 18 days after the same legislature had enacted a local law (chapter 378 of the Laws of 1897) commonly called the "Charter of Greater New York." By section 1611 of this charter it was provided that it should be deemed to have been enacted and should take effect on the 1st day of January, 1898, or seven months after the taking effect of the general act in regard to auctioneers in cities of over 1,000,000 inhabitants. By section 34 of the charter the city clerk was substituted for the mayor, who previously granted licenses to auctioneers, and it was enacted that:

"He shall have authority to grant licenses to any person engaged in and carrying on the business and occupation of auctioneer, or desiring to be so engaged, on such person filing a bond, approved by him, with two good sureties, in the penal sum of two thousand dollars."

It will be seen by this provision that if the local law expressly relating to the city of New York, and to that alone, is in force, no license fee is required of an auctioneer. The main question, therefore, is the selection of the act in force in this year 1898. It is strongly urged by counsel who argue for the exemption from license fee that on the 4th day of May, 1897, the legislature having declared that no subsequent legislation, except by amendment of the charter, should affect its provisions, the general act passed on the 22d day of May, 1897, is not operative. No authority directly in point is cited by counsel in this case either for or against this proposition; but the court calls attention to the case of Mongeon v. People, 55 N. Y. 613, where the court of appeals had occasion to decide this general question, and determined that the legislature cannot declare in advance the intent of subsequent legislation, or its effect upon existing statutes. It was easily possible for the legislature on the 22d of May, 1897, to obliterate the language or the effect of all or any of the provisions of the charter passed on the 4th day of May, 1897. Yet the question remains as to whether the intent of the subsequent legislative act was to repeal the prior act. In favor of the affirmative of such a proposition it may be said that the general act was nugatory in effect, unless it did repeal the prior provisions in regard to licensing auctioneers; for, though general in form, it applied only to the city of New York, and was inconsistent with an act which directed the city clerk to issue licenses, and which required no license fee. On the other side, it may be said that the legislators had shortly previous framed a comprehensive law minutely regulating the governmental affairs of the great city created by them as a municipal corporation, and intelligently formed a symmetrical scheme, whose details in their individual parts were designed for the consummation of the purpose of the whole act, and embodied in the act itself a legislative construction as to the effect of subsequent acts which had no direct reference to the one creating the city as a corporation, and declared that the provisions of the law should begin operation on the 1st day of

January, 1898, as though the act were passed at that date. This declaration included the provisions in regard to licensing of auctioneers, which are entirely nullified if it be held that the same legislators a few days afterwards, by an act not referring in any manner, apparently, to the charter, transferred the power of licenses from the city clerk to the mayor, and imposed a fee of $250 upon an auctioneer before he could do business. It may also be said that the later act imposing a fee might have some effect between the 22d of May, 1897, and the 1st day of January, 1898, though why for seven months such a rule should obtain, and not for the subsequent future, is not clearly apparent. The more truthful cause of the inconsistent action is that the draftsman probably had in view and in mind only prior acts which gave the mayor the power of licensing auctioneers, and overlooked the provision in the city charter shortly before passed. I am aided in my conclusion that the charter of the city of New York, as passed, is in force, by the admission of the learned counsel for the city opposing the motion "that section 34 of the charter relieves the mayor from the duties imposed by chapter 682, and reposed them in the city clerk." The later act destroys the power of the city clerk, and directs the mayor to issue licenses. The counsel for the corporation also admits that section 34 is in force, in that a bond of $2,000 only shall be required, and that consequently section 6 of the later act, which makes the auctioneers' bonds prior liens to all other liens or conveyances or incumbrances upon the property of sureties, is not in force; being destroyed by the power of the former act, taking effect at a subsequent date. If these admissions are forceful,—and they agree with the view of the court as to the law,—the later act cannot be adjudicated to be still in life as to the additional requirement of a license fee.

There is another question, which it is perhaps unnecessary to pass upon, as it has not been raised by counsel. If on the 22d day of May, 1897, the legislature had passed an amendment to the charter of the city of New York, such an act would require the approval of the mayor of the city, or the repassage by the legislature of the law. Const. N. Y. art. 12, § 2. Can an act be passed as a general law which effects such amendment precisely, and has no other force whatever, without such subsequent action by the mayor or by the legislature?

Let a peremptory writ of mandamus issue, to direct the issuing of the license by the respondent. Ordered accordingly.